UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SHANE A. VIREN, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) Case No. 4:17-cv-04335-SLD |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

ORDER

Before the Court is Petitioner Shane A. Viren's Petition for § 2255 Relief, ECF No. 1. For the reasons that follow, the petition is DENIED.

**BACKGROUND[1]**

Viren was charged by complaint with violating 18 U.S.C. §§ 2251(a) and (e). Compl., Cr. ECF No. 1. Later, the grand jury returned a four-count indictment against him, charging him with three counts of sexual exploitation of a minor in violation of 18 U.S.C. §§ 2251(a) and (e) and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Indictment 1–3, Cr. ECF No. 13. The Court appointed George Taseff to represent Viren. Cr. July 18, 2013 Minute Entry. On Viren's request, *see* Cr. July 22, 2013 Minute Entry, the Court ordered an evaluation to determine his competency to stand trial and sanity at the time of the alleged offenses, Order Psychiatric Psychological Examination 1, Cr. ECF No. 11. An evaluation was completed at Metropolitan Correctional Center ("MCC") Chicago ("the MCC evaluation"). After reviewing the MCC evaluation, the Court found Viren competent to stand trial. Cr. Dec. 5, 2013 Minute Entry.

---

[1] References to Viren's underlying criminal case, *United States v. Viren*, 4:13-cr-40057-SLD, take the form: Cr. ___.

1

Viren pleaded guilty to all counts of the indictment without a plea agreement. Cr. Feb. 19, 2015 Minute Entry.[2] The sentencing hearing was held on May 7, 2015. Cr. May 7, 2015 Minute Entry. The Fourth Revised Presentence Investigation Report ("PSR") states that police received a complaint from an adult woman that Viren had raped her three years prior, taken nude pictures of her, and used them to pressure her to have sex with him. PSR ¶ 8, Cr. ECF No. 33.[3] The woman reported that she had observed Viren in possession of a pornographic image of a girl who was approximately sixteen years old and that Viren had a lot of naked pictures that he kept on phones, computers, and memory cards. *Id.* Agents executed a search warrant at Viren's apartment the same day they received the complaint. *Id.* ¶ 9. They located over 800 images and 130 videos of child pornography on Viren's devices, including approximately ten images of bondage and two images of bestiality. *Id.* They also located three pictures of infant genitalia, two of which depicted adult fingers touching the genitalia, which Viren later admitted to taking. *Id.* ¶¶ 9–11. Two of the pictures depicted his girlfriend's nieces and one depicted his daughter; he admitted to touching these minors' genitals. *Id.* ¶¶ 10–11. The PSR also states that the MCC evaluation found Viren met the criteria of mild persistent depressive disorder and pedophilic disorder (sexually attracted to females). *Id.* ¶ 79. It noted that, during interviews for the MCC

---

[2] The parties initially negotiated a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Plea Agreement, Cr. ECF No. 18. Under Rule 11(c)(1)(C), the parties may "agree that a specific sentence or sentencing range is the appropriate disposition of the case," which binds the court if it accepts the plea agreement. The parties agreed that Viren's term of imprisonment would be no longer than thirty years (360 months). Plea Agreement ¶ 19(c). On April 3, 2014, Viren entered a plea of guilty to all counts of the indictment, but the Court neither accepted nor rejected the plea agreement. Cr. Apr. 3, 2014 Minute Entry. After a presentence investigation report had been completed, *see* Cr. ECF No. 22, the Court rejected the plea agreement, Cr. Aug. 14, 2014 Minute Entry. The Court explained that it "w[ould] not accept the 360-month cap" and gave Viren the opportunity to withdraw his guilty plea. Aug. 14, 2014 Hr'g Tr. 2:19–22, Cr. ECF No. 47. Viren withdrew his guilty plea, Cr. Sept. 4, 2014 Minute Entry; Cr. Sept. 4, 2014 Text Order, and subsequently pleaded guilty without an agreement.
[3] This version of the presentence investigation report was filed after the hearing and incorporates revisions made based on objections that were resolved at the hearing which are not relevant to this motion.

evaluation, he "engaged in much denial, minimization and projection of blame onto others for his behaviors, particularly his sexual misconduct." *Id.* ¶ 78.

Because Viren had a prior conviction for sexual assault (of a woman with cerebral palsy who uses a wheelchair), *id.* ¶ 66, he was subject to a twenty-five-year mandatory minimum on the sexual exploitation charges, *id.* ¶ 89; 18 U.S.C. § 2251(e). The Sentencing Guidelines range for the sexual exploitation charges was fifty years or 600 months; it would have been life in prison but was capped at the statutory maximum. Sentencing Hr'g Tr. 7:10–12; 7:20–24, Cr. ECF No. 51; PSR ¶¶ 89, 91; *see* 18 U.S.C. § 2251(e). The Sentencing Guidelines range for the child pornography charge was also the statutory maximum: twenty years or 240 months. Sentencing Hr'g Tr. 7:12–14; PSR ¶¶ 90, 91; *see* 18 U.S.C. § 2252A(b)(2).

Viren submitted letters from his mother and his girlfriend, *see* Letters, Cr. ECF No. 30-1, and a sentencing memorandum which made objections to the PSR, *see* Def.'s Commentary Sentencing Factors, Cr. ECF No. 30, in advance of sentencing. He called his brother, Michael Viren, to testify at the hearing. *See* Sentencing Hr'g Tr. 11:12–34:20. Michael testified that Viren helped him perform maintenance around the apartment building he owned and helped him work on cars. *E.g., id.* at 19:7–10, 25:18–22. He also testified that he "almost didn't recognize" Viren anymore because he looked so pale, thin, and old, *id.* at 23:11–24:7, and that he thought Viren had "a sickness," *id.* at 29:21, needed "professional help," *id.* at 29:22, and that he hoped Viren was ready to accept treatment, *id.* at 30:18–24. Counsel for Viren argued that the mandatory minimum of twenty-five years was sufficient because "it [would be] tantamount to life." *E.g., id.* at 44:4. He noted that Viren was not in good health and was "ageing rapidly" and would be serving his time in maximum security. *Id.* at 44:3–10, 46:15–22.

The Court explained that it had given Viren's case "great consideration." *Id.* at 50:4–5. It found "[t]he volume of th[e] images [found on Viren's devices] . . . bothersome" and "[t]he content . . . horrific." *Id.* at 50:15–17. And it found "the fact that there were 130 videos . . . incredibly concerning." *Id.* at 50:17–18. It also highlighted that his offense "involved three hands-on victims on separate occasions," *id.* at 57:1–2, and that Viren had "violated. . . . one of the most sacred relationships that humans can have" by exploiting his own daughter, *id.* at 52:21–24. Looking to Viren's personal history and characteristics, the Court acknowledged his mother, brother, and girlfriend's comments that "there is goodness in [him]." *Id.* at 54:21–24. But it found that the goodness in Viren was "completely overshadowed with this sickness inside of [him]." *Id.* at 54:25–55:1. It noted the MCC evaluation's diagnosis of pedophilia and found "worrisome . . . that [he] made comments through [his] evaluation to minimize the damage that was done[ and] to minimize [his] behavior." *Id.* at 55:5–8. It explained that the fact that he had done this before—sexually assaulting a vulnerable victim—was "driving in large part the dramatic sentence in this case." *Id.* at 55:11–56:7; *id.* at 56:12–15 ("You have a record here of preying upon vulnerable victims and sexually assaulting them over and over again, that's the common theme in this offense."). The Court noted that "with [Viren's] . . . record, [his] diagnosis, [it] ha[d] very, very minimal belief that [Viren] wo[uld]n't re-offend." *Id.* at 56:19–21. The Court sentenced Viren to 600 months, or fifty years, of custody—600 months on the exploitation counts and 240 months on the child pornography offense, to be run concurrently—and twenty years of supervised release. *Id.* at 58:1–13; Judgment 1–3, Cr. ECF No. 34.

Viren appealed, Not. Appeal, Cr. ECF No. 37, and the Seventh Circuit affirmed his sentence, *United States v. Viren*, 828 F.3d 535, 537 (7th Cir. 2016).[4]  Viren then filed a motion

---

[4] Neither argument made on appeal is relevant to this motion, but for completeness, the Court briefly describes them. Viren argued first that the Court "abused its discretion by failing to explain why it rejected his initial written plea

asking the Court to appoint him an attorney for purposes of filing a motion under 28 U.S.C. § 2255, Mot. Request Counsel, Cr. ECF No. 57, which the Court granted, Cr. Apr. 20, 2017 Text Order. On Viren's behalf, counsel filed the instant Petition for § 2255 Relief, which raises one claim: that defense counsel provided ineffective assistance of counsel by failing to obtain a psychosexual evaluation and failing to present evidence of Viren's psychosexual disorder as mitigation evidence at sentencing. Pet. § 2255 Relief 3. He requests that the Court "order a psychosexual evaluation to be conducted in anticipation of" an evidentiary hearing on his claim. *E.g.*, *id.* at 7.

## DISCUSSION

### I.  Request for Court-Funded Expert

Prior to filing the Petition for § 2255 Relief, but after counsel was appointed, Viren asked the Court to authorize fees for an expert pursuant to 18 U.S.C. § 3006A(e). Mot. Expert Fees, Cr. ECF No. 58. The Court denied the request. Cr. Aug. 10, 2017 Text Order. Viren filed a motion to reconsider, Mot. Reconsider Denial, Cr. ECF No. 59, and the Court denied that motion as well, Cr. Aug. 15, 2017 Text Order. It noted, however, that "[s]hould [Viren] adequately explain, in detail, in his petition for relief under 28 U.S.C. § 2255, what reason he has to believe that his previous counsel was ineffective for failing to retain an expert to evaluate him for sexual psychopathy, the Court may consider a properly filed request at that time." *Id.* (quotation marks omitted).

The Court is not convinced Viren has made a properly filed request—indeed, he did not even file a separate motion requesting authorization of fees for an expert in this case; he merely

---

agreement" and second that the Court erred when calculating his criminal history category under the Sentencing Guidelines. *Viren*, 828 F.3d at 536. The Seventh Circuit rejected the first argument, *id.* at 538–39, and explained that even though the Court did err in calculating the criminal history category, it did not affect Viren's substantial rights because it would not have changed his Sentencing Guidelines range, *id.* at 539–40.

states that he "renews his request for a psychosexual evaluation to be ordered to support []his claim that he has a psychosexual condition and that this evidence would have been mitigating evidence at sentencing." Pet. § 2255 Relief 5–6. He neither cites the statute and relevant case law nor makes any legal argument as to why the Court is authorized to or should fund an expert or order a psychosexual evaluation. In any case, the Court can glean Viren's general argument from his prior motions and his instant motion.

### a. 18 U.S.C. § 3006A(e)(1) in § 2255 Proceedings

18 U.S.C. § 3006A(a)(2) allows a court to appoint counsel to a financially eligible person seeking relief under 28 U.S.C. § 2255 when "the interests of justice so require." "Representation . . . shall include counsel and investigative, expert, and other services necessary for adequate representation." *Id.* § 3006A(a). Section 3006A(e)(1) provides that "[c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them."[5] If the court finds that the services are necessary and that the person is financially unable to obtain them, the court "shall authorize counsel to obtain the services." *Id.* At least one court has held that because § 3006A(e)(1) does not mention § 2255, it does not provide statutory authorization for funding an expert in § 2255 proceedings. *See United States v. Turner*, No. 3:08cr141-DPJ-LRA, 2016 WL 5887760, at *5 (S.D. Miss. Oct. 7, 2016) ("Title 18 U.S.C. § 3006A(e) . . . applies to appointment of an expert in the trial and sentencing of indigent defendants and makes no mention of § 2255. . . . Absent statutory authority for

---

[5] More comprehensively, 18 U.S.C. § 3006A(e)(1) provides that counsel "may request [funding for experts or other services] in an ex parte application" and that "[u]pon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . . shall authorize counsel to obtain the services." Viren filed his request on the public docket with notice to the United States, so the Court finds it unnecessary to dispose of this motion ex parte. Moreover, though the statute suggests a "proceeding" to determine necessity and financial eligibility, *id.*, a district court need not conduct a hearing "when the outcome is readily apparent," *United States v. Winbush*, 580 F.3d 503, 510 (7th Cir. 2009). The Court finds a hearing unnecessary in this case.

appointment of an expert in this context, the Court finds the request unwarranted and denies it."). Other courts, however, have relied on § 3006A(e)(1) to authorize funds for experts, investigators, or other services in habeas proceedings. *See Foy v. United States*, 285 F.R.D. 407, 410–11 (N.D. Ia. 2012) (authorizing funds for an expert to evaluate the petitioner in a § 2255 proceeding, though noting that a request for payment of fees above a certain amount must be approved by the Chief Judge of the Eighth Circuit Court of Appeals); *Gonzalez v. United States*, No. 3:17-cv-603-M-BN, 2017 WL 1231689, at *2–3 (N.D. Tex. Apr. 4, 2017) (authorizing funds for a translator under § 3006A(e)(1) for an indigent § 2255 petitioner). Others have considered requests for fees for experts or other services by habeas petitioners under § 3006A(e) but denied them on the merits. *See United States v. Stallings*, 380 F. Supp. 3d 458, 459–60 (M.D. Pa. 2019) (denying a § 2255 movant's request for funds under 18 U.S.C. § 3006A(e)(1) but noting that the court could authorize funds if the movant had a plausible defense); *Starks v. Meisner*, No. 14-cv-844-jdp, 2016 WL 1259434, at *2 (W.D. Wis. Mar. 30, 2016) (noting, in a § 2254 case, that "if [the court] determine[s] that expert services are necessary to [the petitioner's] habeas case, [the court] may authorize an attorney to secure expert services" under § 3006A(e)(1), though ultimately denying the motion for lack of necessity); *United States v. Slagg*, No. 3:09-cr-69-1, 2012 WL 12985838, at *1–2 (D.N.D. May 25, 2012) (applying § 3006A(e)(1) to a § 2255 petitioner's request for a handwriting expert but denying the request on the merits because the requested expert would not help resolve the "salient question in th[e] case"). And others have suggested that habeas petitioners with counsel appointed under § 3006A may be granted funds for experts or other services but questioned whether the same applies to pro se habeas petitioners. *See Edwards v. Miller*, No. 14cv0429 JAH(KSC), 2016 WL 3092088, at *22 (S.D. Cal. June 2, 2016) (explaining that because the petitioner was "proceeding pro se and the [c]ourt ha[d] not

7

determined that the interests of justice require[d] appointment of counsel . . . he [wa]s likely ineligible to receive f[u]nding for investigative services under § 3006A(e)(1)); *Covarrubias v. Gower*, No. C-13-4611 EMC (pr), 2014 WL 342548, at *1–2 (N.D. Cal. Jan. 28, 2014) (indicating that because the court did not determine that the interests of justice required appointment of counsel, the petitioner "would appear to be textually ineligible to request funding for other services (such as private investigators) that 'counsel' may request under § 3006A(e)(1)" and declining to decide whether Ninth Circuit case law providing that a self-represented criminal defendant could be reimbursed for costs under § 3006A applied to pro se indigent habeas petitioners too).

This Court concludes that because § 3006A(a) indicates that "[r]epresentation . . . shall include counsel and investigative, expert, and other services necessary for adequate representation" and because § 3006A(e)(1) does not limit the Court to authorizing funds only in direct criminal proceedings, a § 2255 petitioner with counsel appointed under § 3006A(a)(2), like Viren, may receive funds for an expert. But this is not the end of the analysis: Viren must demonstrate why the Court should authorize funding for an expert in this case.

    b. **Necessity of Expert Services**

Funding for an expert may only be authorized if "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1). "An expert's services are typically necessary if a reasonable attorney would engage such services for a client having the independent financial means to pay for them." *United States v. Winbush*, 580 F.3d 503, 509 (7th Cir. 2009) (quotation marks omitted). Applying this standard too literally, however, "may require the government to finance a fishing expedition." *Id.* (quotation marks omitted). "Consequently, a district court should satisfy itself that the defendant has a plausible defense before granting a request for expert assistance." *Id.*

Moreover, in a § 2255 proceeding, a petitioner must show good cause for discovery. *See* Rule 6(a), Rules Governing § 2255 Proceedings; *see Foy*, 285 F.R.D. at 408–09, 410–11 (considering whether there was good cause to order a psychological evaluation under Rule 6(a) in a § 2255 proceeding in addition to applying § 3006A(e)(1)'s necessity requirement); *cf. Miller*, 2016 WL 3092088, at *22 (considering, assuming that a pro se habeas petitioner could receive funding for a private investigator under § 3006A(e)(1), whether the petitioner had shown good cause to permit discovery under Rule 6(a)). In this context, good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quotation marks omitted) (alteration in original). Speculation does not constitute good cause. *Jones v. United States*, 231 F. App'x 485, 488 (7th Cir. 2007).

    The only argument Viren makes as to why a psychologist is necessary to adequate representation is that "it will be difficult for [him] to prove prejudice under the second prong of *Strickland* if an expert is not appointed to produce the type of opinion that should have been presented as mitigation evidence at sentencing." Mot. Expert Fees ¶ 7; Pet. § 2255 Relief 6 ("Viren acknowledges that, without a psychosexual evaluation in hand, it is difficult to prove that the outcome of the sentencing hearing would have been different had such a psychosexual evaluation been obtained and presented to the court in mitigation at sentencing. Viren again renews his request for such an evaluation . . . ."). This argument is quite circular: Viren wants the Court to authorize funds for an expert so that he can prove that counsel should have obtained an expert. And if Viren's reasoning were sufficient to show necessity, any financially eligible § 2255 petitioner could assert that counsel was ineffective for failing to obtain an expert and then obtain funds for an expert because, of course, it is difficult to prove that there is a reasonable

9

probability that expert testimony would have changed the result of the proceeding without knowing what the expert would say. *See United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002) ("A defendant's speculation about what evidence might have been found is insufficient to demonstrate prejudice—he must show what the evidence would have been and how it would have produced a different result."); *United States v. Anderson*, 61 F.3d 1290, 1298–99 (7th Cir. 1995) ("Neither the record nor Mr. Anderson suggests how his purported rebuttal witnesses would have testified or how they could have changed the result in this case. Accordingly, we cannot conclude that Mr. Anderson's trial counsel rendered ineffective assistance by failing to call these unnamed witnesses."). This cannot be the standard.

Viren makes no specific allegations explaining why he thinks a psychosexual evaluation would be favorable to him or what he thinks it will prove. In his reply—in response to the United States' argument that he did not explain what information a psychosexual evaluation could have produced that would have changed the sentence imposed, Resp. 13–14, ECF No. 3—Viren states: "[a] psychosexual evaluation performed by a licensed psychologist specializing in this area of practice would shed light not on [his] history of sexual offending . . . but on *why* he has offended in the first place." Reply ¶ 6, ECF No. 4. He then lists some possibilities: "[p]erhaps [he] was victimized himself in the past; perhaps he has an organic brain injury; perhaps he is mildly mentally retarded; perhaps he has some other psychological condition that was not diagnosed in [the] competency evaluation . . . that has made him more likely to commit sex offenses." *Id.* But this is mere speculation about what the report could say, which is insufficient to show that the expert is necessary or that there is good cause to allow the evaluation. *See Stallings*, 380 F. Supp. 3d at 459–460 (denying a request for funds in a § 2255 proceeding wherein the petitioner argued that counsel was ineffective for failing to use an expert

to challenge causation in a heroin distribution resulting in death case because it was "based on pure speculation regarding what a counter-expert might opine"). Viren provides nothing that would suggest that an expert report would uncover any of these reasons. He did not submit an affidavit attesting, for instance, that he has been victimized, that medical professionals throughout his life have suggested that he has any of these conditions, or that he suffers from symptoms of these conditions. Moreover, the record belies at least a few of these potential reasons: Viren denied any history of physical or sexual abuse in the MCC evaluation, and the intellectual functioning testing performed in that evaluation reflected no significant deficits. And it is not clear how a psychologist would diagnose an organic brain injury.

The Court is not persuaded that Viren has met his burden to show that an expert is necessary to representation. The request for funds for an expert under § 3006A(e)(1) is therefore DENIED.

## II. Petition for Relief Under 28 U.S.C. § 2255

### a. Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

### b. Analysis

Viren raises one claim: that counsel was ineffective for failing to obtain a psychosexual evaluation and to present evidence of his psychosexual disorder as mitigation evidence at sentencing. Pet. § 2255 Relief 3. The United States argues that Viren's claim is meritless. *E.g.*, Resp. 1.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are generally subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a petitioner to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Id.* at 688, 692. The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted). The petitioner "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Supreme Court recognized a "narrow exception to *Strickland*[]," *Florida v. Nixon*, 543 U.S. 175, 190 (2004), in *United States v. Cronic*, 466 U.S. 648, 658 (1984). In *Cronic*, the Court held that "[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* In these cases, prejudice is presumed. *See id.* at 661. The *Cronic* Court recognized three circumstances in which prejudice

12

can be presumed: first, when a defendant is "complete[ly] deni[ed] . . . counsel . . . . at a critical stage of . . . trial"; second, when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and third, when "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659–60.

### i. *Cronic*

Viren argues that the Court should apply *Cronic* to his case. Pet. § 2255 Relief 5–7. He argues that his counsel failed to subject the prosecution's case to adversarial testing because counsel did not adduce "professional evidence" of Viren's psychosexual condition or "professional evidence to mitigate" the United States' contention that Viren was one of the most serious child pornography offenders the Court had sentenced. *Id.* at 6–7.

This is clearly a nonstarter. "When [the Supreme Court] spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, [it] indicated that the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 696–97 (2002). Here, Viren acknowledges that his counsel did put on mitigation evidence. *See* Pet. § 2255 Relief 6 (noting that "trial counsel presented two letters from Viren's mother and girlfriend and the testimony of Viren's brother, Michael"). Though Viren fails to acknowledge it, counsel also objected to the PSR and zealously advocated for imposition of the mandatory minimum and against a higher sentence. Moreover, though he faults counsel for providing no professional evidence to support Michael's testimony that Viren had "a sickness," Sentencing Hr'g Tr. 29:21, the Court had the MCC evaluation which diagnosed Viren with pedophilia, so there was professional evidence that he had a psychosexual condition available at sentencing. Because Viren is only challenging counsel's failure to contest the United States' case in specific

ways, it is not appropriate to presume prejudice under *Cronic*. *See Bell*, 535 U.S. at 697 ("[R]espondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind."); *id.* at 697–98 ("The aspects of counsel's performance challenged by respondent—the failure to adduce mitigating evidence and the waiver of closing argument—are plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components."); *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007) ("[C]ourts have rarely applied *Cronic*, emphasizing that only non-representation, not poor representation, triggers a presumption of prejudice." (citing cases)); *United States v. Holman*, 314 F.3d 837, 839 n.1 (7th Cir. 2002) ("*Cronic* only applies if counsel fails to contest *any* portion of the prosecution's case; if counsel mounts a partial defense, *Strickland* is the more appropriate test."); *cf. Miller*, 481 F.3d at 473 (presuming prejudice under *Cronic* where during sentencing, counsel merely moved for a new trial and explained he would not participate in the proceedings and offered no mitigating evidence, did not object to the presentence investigation report, and did not "even lobby for a sentence lower than the one urged by the State"). *Strickland* is the appropriate standard to apply in this case.

   **ii.**  *Strickland*

     **1. Deficient Performance**

  Viren argues that counsel's performance was deficient because he "failed to obtain a psychosexual evaluation and present the evidence contained within that evaluation as mitigation evidence at sentencing." Pet. § 2255 Relief 5. He cites to *Patrasso v. Nelson*, 121 F.3d 297, 303–04 (7th Cir. 1997), for support. Pet. § 2255 Relief 5. In that case, the Seventh Circuit noted

14

the general principle that "[c]ounsel must make a significant effort, based on reasonable investigation and logical argument, to mitigate his client's punishment." *Patrasso*, 121 F.3d at 303–04 (quoting *Eddmonds v. Peters*, 93 F.3d 1307, 1319 (7th Cir. 1996)).  Viren argues that counsel did not do so because he failed to obtain a psychosexual evaluation, which he "believes . . . would show that he suffered from a psychosexual condition that could explain or mitigate his actions." Pet. § 2255 Relief 5.

But Viren's counsel did conduct an investigation and make a significant effort to mitigate his punishment.  He called Viren's brother to testify and submitted letters from Viren's mother and girlfriend.  He also submitted a sentencing memorandum which made objections to the PSR and argued strenuously for the Court to impose the mandatory minimum because it would be tantamount to a life sentence.  True, he did not argue that Viren's psychosexual condition was mitigating or seek out a psychosexual evaluation to obtain evidence beyond the pedophilia diagnosis.  But "counsel's strategic choices generally do not support a claim of ineffective assistance." *Patrasso*, 121 F.3d at 304.  "Such choices include whether to submit mitigation evidence and what type of evidence to submit." *Id.*  And at least a few courts have found that the decision whether to obtain a psychosexual evaluation for sentencing is "entirely within counsel's exercise of reasonable professional judgment." *Griffis v. United States*, No. CV 115-176, 2017 WL 1709316, at *8 (S.D. Ga. Feb. 16, 2017) (citing *Meyer v. United States*, Crim No. 4:07-cr-01181-TLW & C/A No. 4:13-cv-00213-TLW, 2015 WL 178118, at *4 (D.S.C. Jan. 14, 2015), and *Watters v. United States*, No. 11-cv-1181, 2011 WL 3563168, at *3 (C.D. Ill. Aug. 15, 2011)).  This Court agrees.

Viren has done nothing to rebut the presumption that the decision not to seek a psychosexual evaluation was a reasonable strategic decision.  Counsel already knew from the

15

MCC evaluation that Viren met the criteria for pedophilia, so there was no need to obtain further professional evidence merely to determine whether he had a psychosexual condition. And as the United States points out, "Viren's counsel may have exhibited learned sentencing strategy by not obtaining and entering such an evaluation into evidence." Resp. 14–15. During the MCC evaluation, Viren minimized and denied his behavior and blamed others. *See* PSR ¶ 78. The Court found this "worrisome." Sentencing Hr'g Tr. 55:6. A second evaluation that demonstrated minimization and blaming others—or one that suggested Viren had a high risk to recidivate based on his hands-on offenses or minimization—would not be helpful mitigation evidence; instead, it would likely be aggravating. *Cf. Watters*, 2011 WL 3563168, at *3 ("If the psychological evaluation had resulted in a diagnosis of a dangerous mental disorder such as pedophilia or in an opinion that Petitioner was at a high risk of re-offending, then such evidence could have been used against her at sentencing.").

       The Court will not find counsel ineffective for failing to obtain a psychosexual evaluation where there was already a pedophilia diagnosis in the record, Viren previously deflected blame during a psychological evaluation, and counsel did make a significant effort to mitigate Viren's sentence. *See Clemons v. McAdory*, 58 F. App'x 657, 661–62 (7th Cir. 2003) (disagreeing with the district court that sentencing counsel was ineffective for failing to investigate and put on testimony from the petitioner's mother and brother because "although [the petitioner] argues that trial counsel did not investigate mitigating evidence for sentencing, the record indicates otherwise" as "trial counsel argued that Clemons had a difficult upbringing, only nonviolent crimes were in his criminal history, he wanted to get his high school diploma, he had been working odd jobs, and . . . he ultimately could be a useful citizen"); *Williams v. United States*, No. 09 C 3329, 2010 WL 3307070, at *6 (N.D. Ill. Aug. 19, 2010) (noting that an attorney's

efforts to mitigate the petitioner's sentence—which included filing factual objections to the presentence investigation report, collecting nineteen character letters, and bringing to the court's attention the petitioner's post-conviction rehabilitative efforts, lack of a criminal record, work history, and non-recidivist character—"all reflect that [counsel] acted well within the wide range of reasonable professional assistance").

### 2. Prejudice

Even assuming Viren could prove that counsel's decision not to seek a psychosexual evaluation constituted deficient performance, he still must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  As he acknowledges, without any information about what the psychosexual evaluation would have uncovered, "it is difficult to prove that the outcome of the sentencing hearing would have been different." Pet. § 2255 Relief 6.  "A defendant's speculation about what evidence might have been found is insufficient to demonstrate prejudice—he must show what the evidence would have been and how it would have produced a different result." *Traeger*, 289 F.3d at 472; *see Anderson*, 61 F.3d at 1298–99.  And, as the Court explained above, *see supra* Section I(b), Viren is merely speculating about what a psychosexual evaluation would have stated.  Absent any indication of what a psychosexual evaluation would uncover, the Court cannot find that Viren has met his burden to establish prejudice.

### III. Hearing

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the . . . record[] . . . conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  This means that "a district court *must* grant an evidentiary hearing when the

petitioner alleges facts that, if proven, would entitle him to relief." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (quotation marks omitted). No hearing is required, however, "if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (quotation marks omitted).

No hearing is necessary in this case. Viren has not alleged facts that, if proven, would demonstrate that counsel performed deficiently by failing to obtain a psychosexual evaluation or that such an evaluation would have produced mitigating evidence such that there is a reasonable probability he would have been sentenced to less time.

### IV.     Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Viren has not made such a showing. The Court, therefore, declines to issue a certificate of appealability.

### CONCLUSION

Accordingly, Petitioner Shane A. Viren's Petition for § 2255 Relief, ECF No. 1, is DENIED. The Clerk is directed to enter judgment and close the case.

Entered this 10th day of March, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
